IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cr. No. 18-CR-03989-WJ |
| ) | |
| **ALLISTER QUINTANA**, ) | |
| ) | |
| Defendant. ) | |

**NOTICE OF INTENT TO INTRODUCE EVIDENCE**
**PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

Pursuant to Rule 404(b)(2) of the Federal Rules of Evidence, the Government hereby provides notice of its intent to introduce evidence of other crimes, wrongs or acts of the Defendant. The United States seeks to introduce four types of other bad acts against the Defendant. First, the United States seeks to introduce evidence of a previous fist fight between Defendant and the murder victim, John Doe, as evidence of motive and intent to kill Doe. Second, the United States seeks to introduce evidence that, shortly before the murder, Defendant was incarcerated and gave Doe his debit card so that Doe could post Defendant's bail bond. Doe, however, then failed to pay Defendant's bond. Such evidence, again, would be offered to show Defendant's motive and intent to kill Doe. Third, the United States seeks to introduce evidence about Aleister Crowley, a 20th century occultist, to link the identity of the Instagram user account @DanzigCrowley with Defendant Allister Danzig Quintana. The United States has evidence that Defendant's father named Defendant for Aleister Crowley and that the Defendant calls himself "Crowley." As explored in more detail below, the identity of @DanzigCrowley is highly relevant, because there are several inculpatory statements from that Instagram user account sent on the night of the murder. Fourth, the United States seeks to introduce several statements that the Defendant made while he

was incarcerated after February 8th, 2018.  Testimony about those statements will require the United States to reference in front of the jury that Defendant was incarcerated after the murder for an unrelated crime.

**I.     FACTS**

In the early morning of February 3, 2018, Defendant Allister Danzig Quintana brutally beat, confined, and tortured John Doe to death.  Before the torture, kidnapping, and murder, Defendant and Doe drank some alcohol together at Defendant's home.  At some point while they were together, a fight erupted in which Defendant beat Doe with a flashlight, sword, and machete.  Defendant bound Doe with electrical cord and burned different parts of Doe's body with a lighter before moving Doe into a rear closet where Doe was confined.  Around the same time Defendant was torturing Doe, an Instagram account with the username @DanzigCrowley sent several messages to an Instagram account associated with Defendant's girlfriend.  Specifically, @DanzigCrowley messaged that he was "kicking some ass."  When asked why, he responded that he "thought [he] had family, but now [he's] by himself."  An hour later, @DanzigCrowley messaged the same account that he was "about to kill someone."  He also said that there was "shit all over the house."

On February 8, 2018, Defendant was arrested on unrelated charges.  While incarcerated, he told a fellow inmate that he tortured someone and put that person in a closet.  Defendant also acknowledged that the person he put in the closet later died.  Defendant indicated he was worried, because he left the heat on in his house, which could cause the body to decompose quickly.  Defendant asked a fellow inmate whether he would help Defendant clean his house.  He told that inmate that he needed to get something out of his house before it started to "stink."  Defendant

2

told others, while incarcerated, that he was worried about a manslaughter charge and that he wanted to "skip town."

Nearly two weeks later, on a tip by one of Defendant's relatives, law enforcement discovered Doe's body in the rear closet of Defendant's home. The United States later charged Defendant with First Degree Murder, Kidnapping Resulting in Death, and Conspiracy to Commit Kidnapping. (Doc. 37).

Before all of this occurred, Defendant and Doe had a strained history with each other. Defendant and Doe were distantly related, and both are members of the Jicarilla Apache tribe. Although Doe was only five years older than Defendant, Doe had previously dated Defendant's mother. Doe's romantic relationship with Defendant's mother resulted in at least one physical fight between Doe and Defendant, which occurred approximately eight or nine months before the murder.

Moreover, Defendant threatened to harm Doe just prior to the murder. In January 2018, only a month before Doe's death, Defendant asked Doe to bail him out of jail. Defendant loaned Doe his debit card so that Doe could withdraw Defendant's money to cover the bail bond. Doe took the debit card, but never posted Defendant's bond. After Doe failed to post bail, Defendant was overheard saying at the jail that he was going to "beat [Doe]'s ass." Defendant also asked a fellow inmate to assault Doe if the inmate was released before Defendant. That inmate declined Defendant's request, so Defendant responded that he would "handle it in [his] own hands."

## II.  APPLICABLE LAW

The Federal Rules of Evidence permit the admission of evidence of "prior bad acts," generally to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence

of mistake or accident.  Fed. R. Evid. 404(b).  Rule 404(b) is an inclusive rule and the evidence is to be admitted as long as it proves something other than criminal propensity and bad character, even if the evidence also demonstrates propensity.  See United States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007)("[W]hen other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has the potential impermissible side effect of allowing the jury to infer criminal propensity.").  Generally, bad acts are offered to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Fed. R. Evid. 404(b).  Rule 404(b)'s list of proper purposes, however, are "illustrative, not exhaustive."  United States v. Henthorn, 864 F.3d 1241, 1248 (10th Cir. 2017).  The Tenth Circuit employs a four part test to determine if evidence is admissible under 404(b):  (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Rule 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.  United States v. Smalls, 752 F.3d 1227, 1237 (10th Cir. 2014); see also Huddleston v. United States, 485 U.S. 681, 691-92 (1988).

### III.  THE UNITED STATES OFFERS THE FOLLOWING EVIDENCE FOR A RELEVANT AND PROPER PURPOSE, AND RULE 403 DOES NOT BAR ITS ADMISSION.

#### A.  The Fist Fight

The United States seeks to introduce evidence of a previous fist fight between Defendant and Doe, which occurred the summer before the murder.  Doe and Defendant are cousins and grew up together – almost as siblings.  The fight occurred, because Doe was dating Defendant's mother.

The United States will introduce evidence that this fight was one of the reasons Defendant had "hard feelings" toward Doe. Thus, evidence of the fight is evidence that Defendant harbored a grudge toward Doe, which ultimately goes to Defendant's motive and intent to kill Doe. See United States v. Naranjo, 710 F.2d 1465, 1467 (10th Cir. 1983)(affirming admission of the defendant's previous batteries of the victim in a second-degree murder case, because such evidence went to intent). Intent and motive are proper purposes under 404(b), and they are both relevant to prove first-degree murder, 18 U.S.C. § 1111(a).

      The potential for unfair prejudice resulting from evidence of the fist fight is not unfairly prejudicial, let alone so unfairly prejudicial as to outweigh its probative value. See United States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007)("Unfair prejudice . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."); see also United States v. Rodriguez, 192 F.3d 946, 949 (10th Cir. 1999)("Rule 403 is an extraordinary remedy and should be used sparingly."). Evidence of a fist fight between the two men, months before the murder, bears a low risk that the jury will be so overcome by emotion as to decide this case on an improper basis. The risk of a propensity inference is also slight, given the differences between the two altercations – one was a fist fight resulting in, perhaps, bruises or other minor injuries; the other resulting in torture and death. Moreover, the United States expects that testimony about the fist fight will be relatively short in comparison to the trial as a whole, further diminishing any risk of unfair prejudice. See United States v. McClelland, 141 F.3d 967, 972 (10th Cir. 1998)("[T]he testimony was not inflammatory or so extensive in the context of the trial as a whole to be unduly prejudicial."). Accordingly, the United States respectfully requests that the Court rule to admit this evidence.

### B.     The Debit Card Bail Out

The United States also seeks to introduce evidence that, just before the murder, Doe failed to bail Defendant out of jail with Defendant's debit card as Doe promised. The evidence, again, goes to intent and motive, which are relevant and proper purposes. See Fed. R. Evid. 404(b); 18 U.S.C. § 1111(a). It shows intent and motive, because a jury could reasonably infer that Doe's failure to post bail would cause, or, at least, contribute to Defendant's decision to kill Doe.

Normally, evidence of a victim's failure to meet an obligation to a defendant would not be bad act evidence as to that defendant. To fairly capture the consequence of this evidence, however, the United States must introduce that Defendant was incarcerated. Doe did not just break any promise to Defendant. Rather, as a direct result of Doe's actions, Defendant was caged in a jail cell for longer than he had to be. A jury could reasonably infer that such a slight would have a stronger impact on Defendant's later decision-making as to Doe than some other generic obligation not met.

This evidence is also not so unfairly prejudicial as to warrant exclusion under Rule 403. Given the proximity to the murder, this evidence is strongly probative to motive and intent. Accordingly, Defendant's hurdle to show that this evidence is inadmissible is even harder to surmount. United States v. Cerno, 529 F.3d 926, 935 (10th Cir. 2008)("[T]he danger of that prejudice must *substantially* outweigh the evidence's probative value.")(emphasis in original). The United States does not intend to introduce for what crime Defendant was incarcerated, which should further mitigate any risk of unfair prejudice. The United States therefore respectfully requests that the Court rule to admit this evidence.

6

C. <u>**Aleister Crowley**</u>

The United States seeks to introduce evidence about Aleister Crowley, an early twentieth-century occultist, to link the Instagram user account @DanzigCrowley with Allister Danzig Quintana. Proving identity is a proper purpose under 404(b). <u>United States v. Shumway</u>, 112 F.3d 1413, 1419 (10th Cir. 1997).

This evidence is relevant, because Aleister Crowley provides a link between Defendant and the Instagram user profile @DanzigCrowley, which has several inculpatory statements from the early morning hours of the murder. First, the Instagram user account @DanzigCrowley has a pentagram as its user profile picture. Pentagrams are associated with the occult, <u>see</u> <u>Harris v. Electro-Motive Diesel, Inc.</u>, 2015 WL 632389, at *4 (N.D. Ill. 2015), as is Aleister Crowley, <u>see</u>, e.g., Martin Booth, <u>A Magick Life: The Biography of Aleister Crowley</u> (2000); Ozzy Osbourne, <u>Mr. Crowley</u>, The Blizzard of Ozz (1980). Thus, the pentagram and the partial username "Crowley" would allow a juror to reasonably infer that the username is, in part, a reference to Aleister Crowley. Second, there is a connection between Aleister Crowley and Defendant Allister Danzig Quintana. Though spelled differently, the United States has evidence that Defendant's parents named Defendant Allister Danzig Quintana for Aleister Crowley. The United States also has evidence that Defendant refers to himself as Crowley. Given those facts, evidence about Aleister Crowley and Crowley's association with the occult, is relevant toward showing that @DanzigCrowley is Defendant.

Evidence about @DanzigCrowley's identity is highly probative, because there are several inculpatory statements from that Instagram user account. Specifically, on the morning of the murder, @DanzigCrowley messaged an Instagram user account associated with Defendant's

girlfriend that, among other things, he was "about to kill someone" and that there was "shit all over the house." About an hour earlier, @DanzigCrowley had messaged the same person that he was "kicking some ass." When asked why, he responded that he "thought [he] had family, but now [he's] by himself."

Rule 403 weighs toward admissibility. Though the United States acknowledges that connecting Defendant with the occult bears some risk of unfair prejudice, because the Court must give the evidence "its maximum reasonable probative force and its minimum reasonable prejudicial value," the highly probative nature of this evidence outweighs that concern. Henthorn, 864 F.3d at 1256. Direct evidence of intent is rare, but the statement that he was "about to kill someone" is close to direct evidence that Defendant formed the requisite intent for first-degree murder. The other messages support inferences that Defendant later murdered Doe, such as the one that there was "shit all over the house." Furthermore, the hour-time delay between the message that he was "kicking some ass" and the message that he was "about to kill someone" supports an inference that the murder did not occur in the heat of the moment – negating a potential voluntary manslaughter defense. Accordingly, this evidence is highly probative, and the United States requests that the Court rule that it is admissible.

D. **The Jailhouse Inculpatory Statements**

The United States intends to introduce several inculpatory statements from Defendant while he was incarcerated after February 8, 2018. Specifically, it intends to introduce that Defendant: (i) told a fellow inmate that he tortured someone and put them in a closet; (ii) acknowledged that the person he put in the closet later died; (iii) indicated he was worried, because he left the heat on in his house, which could cause the body to decompose quickly; (iv) asked a

fellow inmate whether he would help Defendant clean his house; (v) told that inmate that he needed to get something out of his house before it started to "stink"; and (vi) told others, while incarcerated, that he was worried about a manslaughter charge and that he wanted to "skip town."

The foregoing statements are not subject to Rule 404(b), because they are not about other bad acts – they concern the bad acts as alleged in the indictment. Nevertheless, eliciting those statements will likely produce incidental testimony that Defendant was incarcerated on a different matter when he made them. The United States seeks a ruling that such evidence of Defendant's post-February 8th incarceration is admissible either under Rule 404(b) or res gestae.

      i.      Defendant's post-February 8th incarceration is admissible under 404(b)

Evidence of Defendant's incarceration is proper and relevant towards witness credibility. See Sanders v. Buchanan, 407 F.2d 161, 162 (10th Cir. 1969)("The credibility of the witness is always relevant in search for the truth."); Montoya v. Sheldon, 898 F. Supp. 2d 1259, 1275 (D.N.M. 2012)(Browning, J.)("The credibility of any witness who takes the stand is always an issue at trial."); see also United States v. Olivo, 69 F.3d 1057, 1065 (10th Cir. 1995)(Impeachment of own witness's credibility is a proper "other" purpose under 404(b)). Without the key context that the Defendant was incarcerated, a reasonable juror might question the witness's veracity when he testifies that Defendant made the foregoing statements. For example, with respect to the statements that Defendant was worried about the dead body decomposing quickly and that he needed to get the body out of the house before it started to stink, a reasonable juror would likely question why Defendant did not then go and clean up his house before the FBI arrived two weeks later. The answer is that Defendant was incarcerated, so he could not physically get to his house. The same reasoning holds with the statement that Defendant wanted to "skip town"; a reasonable

juror would likely ask, why did the Defendant stay in town? The Defendant could not skip town, because he was confined to a jail cell. Without the fact that Defendant was incarcerated, however, a juror might reasonably conclude that the witness's statements do not make sense and therefore might discount the testimony. In short, should the witness be hamstrung from testifying that Defendant was incarcerated, the jury would be kept from fairly evaluating the witness and the testimony.

Risk of unfair prejudice under rule 403, does not substantially outweigh the probative value, because these statements are strongly probative. They show Defendant knew there was a dead body in his house. Evidence that Defendant meant to flee is also solid circumstantial evidence of a guilty mind.

        ii.        <u>Defendant's post-February 8th incarceration is admissible under res gestae</u>

Alternatively, Defendant's post-February 8th incarceration is admissible under res gestae. Res gestae is evidence that it is "inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act." <u>United States v. Ford</u>, 613 F.3d 1263, 1267 (10th Cir. 2010). As discussed above, the witness's testimony about Defendant's jailhouse statements will be "confusing and incomplete without mention of" Defendant's incarceration. <u>Id.</u> A juror might reasonably question why defendant did not clean his house or "skip town" before law enforcement caught wind of the crime. See <u>Wilson v. Jara</u>, 2011 WL 6739166, at *8 (D.N.M. 2011)(Browning, J.)(admitting, as res gestae evidence, testimony which put the plaintiff's "conduct in context"). Res gestae evidence is also subject to rule 403, <u>see</u> <u>Ford</u>, 613 F.3d at 1268, and passes muster for the same reasons as explained above. Accordingly, the United States requests that the Court rule this evidence admissible.

**IV.    THE UNITED STATES DOES NOT OPPOSE A LIMITING INSTRUCTION TO ANY OF THE FOREGOING EVIDENCE.**

The final 404(b) factor requires the Court, upon request, to instruct the jury to consider the evidence only for the purpose for which it was admitted.  <u>Henthorn</u>, 864 F.3d at 1256.  Should Defendant request that instruction for the foregoing evidence, the United States would not object.

**V.    CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court allow the above-described evidence to be offered in the prosecution's case-in-chief. The Government seeks a pre-trial ruling on this motion.

                                                                Respectfully submitted,


                                                                JOHN ANDERSON
                                                                United States Attorney

                                                                ***Electronically filed on April 26, 2019***
                                                                JOSEPH M. SPINDLE
                                                                FREDERICK T. MENDENHALL
                                                                Assistant United States Attorney
                                                                Post Office Box 607
                                                                Albuquerque, New Mexico 87103
                                                                (505) 346-7274


I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will cause a copy of this filing to be sent to counsel for Defendant.

***Filed Electronically on April 26, 2019***
Frederick T. Mendenhall
Assistant United States Attorney