IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 18-03989-WJ |
| | ) | |
| **ALLISTER DANZIG QUINTANA**, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSR AND MOTION FOR A DOWNWARD DEPARTURE/VARIANCE**

The United States hereby files this response to *Defendant's Sentencing Memorandum and Motion for Downward Departure or in the alternative Variance; and Opposition to United States' Motion for Upward Departure or in the Alternative Variance* (Doc. 99) and requests the Court deny defendant Allister Quintana's requested relief for the following reasons:

**I.      FACTS**

On January 22, 2020, Allister Quintana pleaded guilty to an information alleging second-degree murder in Indian Country.  (Doc. 57).  Quintana admitted causing John Doe to become "restrained and confined in a closet, causing John Doe's death." *Id*., ¶ 7.  For his conduct, he acknowledged that he was facing up to life imprisonment. *Id*., ¶ 4(a).  He agreed that the United States reserved its right to pursue "any position or argument with respect to the sentence to be imposed." *Id*., ¶ 10.

On March 16, 2020, the Probation Office submitted its presentence investigation report (PSR) indicating that the Quintana's applicable guidelines range is 210 to 262 months of imprisonment.  (Doc. 60, ¶ 80).  The Probation Office noted that an upward departure may be warranted for Quintana's "unusually heinous, cruel, brutal, or degrading conduct." *Id*., ¶ 95.

Accordingly, the United States requests such a departure, or in the alternative variance, for a

sentence of life imprisonment.  (Doc. 64).

On August 27, 2021, Quintana filed a consolidated pleading relating to his sentencing

hearing.  (Doc. 99).  In the pleading, he objected to paragraphs 14 through 16 of the PSR[1],

claiming they were unreliable accounts of his co-defendant.  *Id*.  Quintana requested a downward

departure without providing authority from the sentencing guidelines.  *Id*.  In the alternative, he

requested a variance based entirely on his purported history and characteristics.  *Id*.  Ultimately,

Quintana requested this Court sentence him to 180 months of imprisonment.  *Id*.  The United

States hereby objects to all of Quintana's requested relief.

## II.      QUINTANA'S OBJECTIONS TO THE PSR

Quintana's objections to the Presentence Investigation Report (PSR) should be overruled.

The PSR is an accurate recitation of the events and a fair application of the law.  However, to the

extent that Quintana's factual objections express his version of the events, the PSR may

incorporate them pursuant to Fed. R. Crim. P. 32(c)(2).  This subsection permits a defendant to

present his side of the story, but a court does not have to believe him.  *United States v. Needles*,

472 F.2d 652, 658 (2nd Cir. 1973).  As noted by the Fifth Circuit, a convicted defendant is likely

to disagree with the information in a PSR, but he "bears the burden of demonstrating its untruth,

inaccuracy, or unreliability."  *United States v. Gracia*, 983 F.2d 625, 630 (5th Cir. 1993).  As

explained below, Quintana did not meet this burden on any of his objections.

Paragraphs 14 through 16 of the PSR are accurate recitations of the account of Quintana's

co-defendant.  Quintana objected to this version of events, claiming that co-defendant was the

---

[1] Defendant did not reference his objections to the PSR in the title of his pleading but noted the
objections in the body of the document.  (Doc. 99 at 2).

principal actor in the murder of John Doe.  (Doc. 99).  This claim is contradicted by other witnesses, Quintana's statements, and logic.

### 1.  Quintana's statements indicate that he killed John Doe.

Quintana and his co-defendant participated in the torture and murder of John Doe. However, Quintana was the principal actor.  In addition to the comprehensive account provided by his co-defendant, Quintana's own statements indicate that he killed John Doe.

Quintana had the motive to kill John Doe.  Quintana fought Doe twice in the year preceding the murder due to his anger about a sexual relationship between Doe and Quintana's mother.  (Doc. 99-3 at 19).  It became so contentious that Quintana struck Doe in the head with a guitar.  *Id*.  After these fights, Quintana and Doe were incarcerated together.  Doe was supposed to bail Quintana out of jail but failed to do so.  Ex. 1 at 3.  This angered Quintana enough to tell his friend Bennie Collins that he would "handle it in [his] own hands."  *Id*.  Quintana clarified this statement by explaining to Brian Cachucha that he intended to kill John Doe.  Ex. 2 at 7.  On February 3rd of 2018, Allister Quintana got his chance.

Allister Quintana killed John Doe on February 3, 2018.  In the early morning hours, he began sending Instagram messages to Janessa Vigil.  Ex. 1 at 16.  At 6:54 a.m., he told Janessa that he was "kicking some ass."  *Id*.  At 7:25 a.m. he told Janessa that he was "about to kill someone."  *Id*.  Shortly thereafter, he confessed that there was "shit all over the house."  *Id*. Janessa only knew Allister Quintana to ever use the Instagram messenger account from which he was messaging her.  *Id*. at 14.

In mid-February, Allister Quintana admitted to Johnny McDonald that he and his co-defendant tortured a man and put him in a closet.  Ex. 2 at 2.  Quintana conceded that the man died in the closet.  *Id*.  Quintana admitted he was concerned about getting caught and told

Matthew Martines that he needed to clean up his house "before it began to stink" or he would be facing a manslaughter charge. Ex. 1 at 10. Quintana explained to his friend Bennie Collins that he "went overboard" and did something bad. *Id*. at 5. Even during the pendency of this case, Quintana admitted to Dr. Johnson, that he "killed someone [he] love[d]." (Doc. 99-3 at 23). In none of these statements did Quintana implicate his co-defendant or suggest that his co-defendant was the main actor.

### 2. Quintana's present version of the events is unreliable.

It is unclear what Quintana wants this Court to believe. In one paragraph, he claims that his "level of intoxication had become so severe that he blacked out and had a very difficult time remembering and reconstructing the events." (Doc. 99 at 5). Yet, in another he claims to provide an accurate and thorough accounting of the events. (Doc. 99-1). One thing is certain, Quintana is not credible. In addition to his admitted intoxication, Quintana has a long history of dishonesty.

Quintana has provided numerous accounts of the events on February 3, 2018. Around the time of the murder, he made several inculpatory statements made to friends and family described *supra*. However, he told the FBI that he had not seen Doe since late January of 2018. (Doc. 99-3 at 21). During the pendency of this case, he told Dr. Johnson that he did not remember anything about what happened the night of the murder. *Id*. at 22. Even Dr. Johnson was incredulous, noting that his "memory for the events leading to the death of Mr. Howland may be more accessible than he has reported during interviews." *Id*. In other words, Quintana's own expert suggests he is a liar.

### 3.   Quintana's present version of the events is illogical.

Quintana wants this Court to believe that he was not the instigator of the violent torture and murder of John Doe.  However, in addition to the inconsistencies, previous admissions, and motive to kill Doe, logic does not support Quintana's current version.  First, Doe's body was located within Quintana's house along with several instruments of torture.  Second, Quintana was more physically capable of effectuating torture than his co-defendant.  At the time of the murder, Quintana's co-defendant had a broken collarbone.  Ex. 1 at 4.  Third, Quintana's claimed ignorance that Doe was bound in the closet is improbable.  It was nearly a week before Quintana was taken to jail, giving him that much time to hear, see, and unfortunately smell the fruits of his violence.  Finally, this is entirely consistent with Quintana's previous conduct.

Quintana is an incredibly violent person.  Dr. Johnson diagnosed him with "a history of interpersonal violence prior to the instant crime." (Doc. 99-3 at 36).  Nearly every one of his friends and colleagues discussed his inherent violence.  *Id*. at 15-20.  He has been arrested for domestic violence several times.  (Doc. 60, ¶¶ 38-42).  Even during the pendency of this case, he was involved in an altercation involving a weapon.  (Doc. 99-3 at 23).  It should come as no surprise that Quintana's behavior finally resulted in a more serious outcome.

### III.    QUINTANA'S MOTION FOR A DOWNWARD DEPARTURE

A downward departure must be based upon "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b)(1).  In assessing the reasonableness of these circumstances, "the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." *Id*.  Generally, the burden is on the defendant to establish that a downward departure is warranted. *United States v. Verners*, 103 F.3d 108, 110

(10th Cir. 1996).  Finally, the United States is entitled to reasonable notice of the basis of a

downward departure.  *United States v. Fuentes*, 341 F.3d 1216 (10th Cir. 2003).

In his motion, Quintana does not cite to any sentencing guidelines, policy statements, or

official commentary of the sentencing commission.   His general request for a downward

departure, without providing authority, is unpersuasive.  Rather than providing support for a

downward departure, Quintana seemingly attempts to rebut the United States motion for a

departure under U.S.S.G. § 5K2.8.  However, his arguments are misplaced.

Quintana claims his second-degree murder conviction should not be subject to first

degree penalties.  Congress and the sentencing commission disagree.  First and second-degree

murder are subject to a potential sentence of life imprisonment.  18 U.S.C. 1111.  Life

imprisonment is within the guidelines range for an unenhanced second-degree conviction with a

criminal history category of V.  U.S.S.G. §§ 2A1.2 and 5A.  In fact, Quintana admitted in his

plea agreement that he was aware that he could be sentenced to life imprisonment.  It should

come as no surprise that this is the outcome, but Quintana attempts to draw a false analogy with

Tenth Circuit precedent.

The cases cited by Quintana stand for the proposition that a court should not depart for a

circumstance already considered by the sentencing commission, such as premeditation.  *See*

*United States v. Kelly*, 1 F.3d 1140 (10th Cir. 1993); *United States v. Hanson*, 264 F.3d 988

(10th Cir. 2001); *United States v. Wolfe*, 435 F.3d 1289 (10th Cir. 2006).  All these cases hold

that it is improper to "double count" conduct that was already considered by the sentencing

commission.  *Id*.  The United States is not requesting a departure for premeditation.  The

requested departure is based upon the Quintana's unusually heinous, cruel, brutal, or degrading

conduct.  (Doc. 64 at 3).  The *Hanson* case, cited by Quintana, verified that an upward departure from second-degree murder on those exact grounds is permissible.  *Hanson*, 264 F.3d at 999.

Quintana cited to *Lente* as authority for the requirement that the Court consider his argument.  (Doc. 99 at 23).  While this is procedurally correct, a court need only consider a "material, non-frivolous argument," not adopt it.  *United States v. Lente*, 647 F.3d 1021, 1034 (10th Cir. 2011).  After the Tenth Circuit remanded the issue to the district court ordering consideration of the arguments, the district court complied and imposed an upward variance approximately four times the guidelines range.  *United States v. Lente*, 759 F.3d 1149 (10th Cir. 2014).  On subsequent appeal, the Tenth Circuit agreed that the upward variance was substantively reasonable based upon three factors.  *Id*.  In this case, the United States identified multiple factors warranting an upward departure much less drastic that in *Lente*.  (Doc. 64).

**IV.     QUINTANA'S MOTION FOR A DOWNWARD VARIANCE**

A Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient but not greater than necessary to achieve the statutory purposes of federal sentencing.  *United States v. Booker*, 543 U.S. 220 (2005).  While a guidelines sentence enjoys an appellate presumption of reasonableness, a sentencing court may vary after consideration of all of the sentencing factors.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  The greater the degree of variance, the greater the justification needed.  *Id*.  Here, the sentencing factors do not support a downward variance.

In his motion, Quintana argues for a downward variance based on his history and characteristics.  This is one of seven factors a court must consider and, contrary to Quintana's claim, provides upward pressure on the sentence.  As discussed above, Quintana is an incredibly violent person who perpetrated a heinous and brutal murder.  The methods of torture far

exceeded what would be needed to kill Doe.  Quintana wanted to make him suffer.  Even after

killing Doe, Quintana's conduct caused Doe's family excessive suffering.  *See* ex. 1 at 14 (Doe's

sister describing discovering his unrecognizable body).

Even Quintana's own expert does not provide support for mitigation.  In addition to the

implication that Quintana continues to lie, she noted that, "Apart from intoxication- and

underlying problems with emotional self-regulation- it is not clear what other factors might have

contributed to Mr. Quintana's involvement in the instant crime." (Doc. 99-3 at 37).  Unlike

many defendants, Quintana's conduct was solely driven by malice and evil.

### III.     CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny

Quintana's objections to the PSR, motion for a downward departure or in the alternative a

downward variance, and grant the United States' motion for an upward departure or variance.

                                            Respectfully submitted,

                                            FRED J. FEDERICI
                                            Acting United States Attorney

                                            ***Electronically filed on August 31, 2021***
                                            JOSEPH M. SPINDLE
                                            FREDERICK MENDENHALL
                                            Assistant United States Attorney
                                            Post Office Box 607
                                            Albuquerque, New Mexico 87103
                                            (505) 346-7274

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will cause a copy of this filing to be sent to counsel for Defendant.

***Filed Electronically on August 31, 2021***

Joseph M. Spindle
Assistant United States Attorney